Olmstead, Trustee, et al., Appellants, *v.* The
Lumbermens Mutual Ins. Co., Appellee.

[Cite as Olmstead v. Lumbermens Mutl. Ins. Co. (1970),
22 Ohio St. 2d 212.]

(No. 69-343—Decided May 27, 1970.)

214

*Messrs. Goodman & Goodman* and *Mr. Sol Goodman,* for appellants.

*Messrs. Clausen, Hirsh, Miller & Gorman, Mr. Jacob T. Pincus, Messrs. Lindhorst & Dreidame* and *Mr. James L. O'Connell,* for appellee.

DUNCAN, J. In argument and in brief counsel discuss and invite our attention to certain clauses of the insurance contract which spawn a number of barriers which must be hurdled by one in search of the intent of the parties. In the case at bar, only one is pivotal, *i. e.,* what is a "collapse."

Plaintiffs urge that the word "collapse" is reasonably open to different interpretations and requires construction most favorable to the insureds and against the insurer or creator of the language. *Mumaw* v. *Western & Southern Life Ins. Co.,* 97 Ohio St. 1, paragraph one of the syllabus; *Great American Mut. Indem. Co.* v. *Jones,* 111 Ohio St. 84, paragraph one of the syllabus; *Toms* v. *Hartford Fire Ins. Co.,* 146 Ohio St. 39, paragraph one of the syllabus; *Munchick* v. *Fidelity & Cas. Co. of N. Y.,* 2 Ohio St. 2d 303, paragraph one of the syllabus. Defendant counters by arguing that the meaning of the word "collapse" is unambiguous and that it should be given its common and usual meaning. *Morgan* v. *Boyer,* 39 Ohio St. 324 (paragraph three of the syllabus); *Fidelity & Cas. Co. of N. Y.* v. *Hartzell Bros.,* 109 Ohio St. 566; *First Natl. Bank* v. *Houtzer,* 96 Ohio St. 404.

Some courts have liberally defined "collapse" to mean damage materially impairing the basic structure or in-

tegrity of a building or making parts thereof incapable of fulfilling their intended function. See, *e. g., Morton* v. *Great American Ins. Co.*, 77 N. M. 35, 419 P. 2d 239; *Travelers Fire Ins. Co.* v. *Whaley*, 272 F. 2d 288. Compare *Bradish* v. *British American Assur. Co.*, 9 Wis. 2d 601, 101 N. W. 2d 814, with *Thornewell* v. *Indiana Lumbermans Mut. Ins. Co.*, 33 Wis. 2d 344, 147 N. W. 2d 317. A numerical majority of other jurisdictions, and the Court of Appeals in the instant case, have held that the word "collapse" has a plain and natural dictionary meaning, which they follow. See, *e. g., Higgins* v. *Connecticut Fire Ins. Co.*, 163 Colo. 292, 430 P. 2d 479; *Central Mut. Ins. Co.* v. *Royal*, 269 Ala. 372, 113 So. 2d 680, 72 A. L. R. 2d 1283; *Skelly* v. *Fidelity & Cas. Co.*, 313 Pa. 202, 169 A. 78; *Niagara Fire Ins. Co.* v. *Curtsinger* (Ky.), 361 S. W. 2d 762; *Gage* v. *Union Mut. Fire Ins. Co.*, 122 Vt. 246, 169 A. 2d 29.

We fail to see any ambiguity in the word "collapse." That word, in its plain, common and ordinary sense, means a falling down, falling together, or caving into an unorganized mass. When words used in a policy of insurance have a plain and ordinary meaning, it is neither necessary nor permissible to resort to construction unless the plain meaning would lead to an absurd result. *Lawler* v. *Burt*, 7 Ohio St. 341, 350; *First Natl. Bank* v. *Houtzer*, 96 Ohio St. 404, 406; *Federal Gas & Fuel Co.* v. *Columbus*, 96 Ohio St. 530, 544.

The assertion by plaintiffs that the parties intended the word "collapse" to have a broader meaning imposes the burden on plaintiffs of establishing that such was the true intent of the parties. As the Supreme Court of Texas said in *Employers Mutual Cas. Co.* v. *Nelson* (Tex.), 361 S. W. 2d 704, at 709:

"Although contracts are * * * to be construed strictly in favor of the insured, nevertheless they are to be construed generally as other contracts, in that unambiguous words and phrases are to be taken in their ordinary meaning unless there is something in the contract that would indicate a contrary intention."

Ohio law also requires intent to be proved from the written contractual matter expressed by the parties. *Blosser* v. *Enderlin*, 113 Ohio St. 121, paragraphs one and two of the syllabus. See *Employers' Liability Assur. Corp.* v. *Roehm*, 99 Ohio St. 343. Plaintiff has presented no evidence concerning any contrary intent of the parties, and thus the word "collapse" must be given its ordinary and common meaning.

Plaintiff urges that such a conclusion is illogical and that the uninstructed jury's verdict that a collapse occurred demonstrates the ambiguity of the term. That argument is untenable because, without such an instruction, the jury was required to speculate about the meaning of a contractual term when a common ordinary meaning of the term existed.

In *Garlick* v. *McFarland*, 159 Ohio St. 539, Judge Matthias states, at page 545: "The rule is well established that words used in a contract of insurance are to be given their natural and usual meaning unless otherwise defined in the contract." In that case, the parties were in dispute over the definition of "owner" as used in an insurance policy. At page 549, it is stated that "the definition of owner as used in the insurance policy was a question of law for the court * * *." In the case at bar, the policy does not define "collapse," nor was evidence adduced revealing that a meaning of the term different from the usual meaning was intended by the parties. The refusal to give a special charge defining "collapse" and the omission of a definition of that term in the general charge, presented the issue as if it were a question of fact for jury determination, rather than one of law. We are of the opinion that the court should have instructed the jury concerning the common ordinary meaning of collapse.

Although we deem this failure to be error, a retrial of the cause is not indicated, because of our conclusions regarding the posture of the evidence.

We agree with the Court of Appeals that reasonable minds construing the evidence most favorably cannot con-

clude plaintiffs sustained damages as a result of a collapse.

Likewise, similar reasoning applies to plaintiff's contention that there was coverage under paragraph 13 of the policy, entitled "Landslide." The ordinary meaning of that word is the "sliding down of a mass of soil * * * or rock on a steep slope." Random House, The American College Dictionary. Using this definition, there is no evidence of a "landslide" in the record.

Since we hold that there was no coverage under the policy, under the facts of this case, it is unnecessary to consider the effect or meaning of the exclusionary clauses. The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

O'NEILL, C. J., LEACH, SCHNEIDER, HERBERT and CORRIGAN, JJ., concur.[2]

LEACH, J., of the Tenth Appellate District, sitting for MATTHIAS, J.

---

[2] CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.