**NATIONWIDE INSURANCE COMPANY, Appellee,**

v.

**TOBLER, Admr., et al., Appellants.**█

[Cite as *Nationwide Ins. Co. v. Tobler* (1992), 80 Ohio App.3d 560.]

Court of Appeals of Ohio,
Warren County.

Nos. CA91–09–068, CA91–09–069.

Decided June 8, 1992.

*Baden, Jones & Scheper Co., L.P.A., James H. Scheper* and *Thomas P. Erven,* for appellee.

*Rittgers & Mengle, W. Andrew Hasselbach* and *Charles H. Rittgers,* for appellant Rosalie Tobler.

*James B. Barbeau,* for appellants Russell and Ellen Tye.

---

*Per Curiam.*

Defendants-appellants, Rosalie Tobler, administrator of the estate of Shawn Kelly, Ellen Tye, administrator of the estate of Eric Lilze, and Russell Tye, appeal a decision of the Warren County Court of Common Pleas in favor of plaintiff-appellee, Nationwide Insurance Company ("Nationwide").

On March 12, 1988, Russell Tye was the named insured in an automobile insurance policy issued by Nationwide. The policy insured two automobiles owned by Russell Tye, including a 1975 Ford Mustang, for liability and uninsured motorist coverage. Russell Tye paid a substantial additional premium on the policy because his twenty-year-old grandson, Eric Lilze, was a "rated driver" under the policy.

On March 12, 1988, at approximately 3:00 p.m., Russell Tye gave Lilze, who lived in the Tye household, permission to drive the Mustang to a job interview in Mt. Carmel, Ohio, which was a short distance from the Tye residence. However, Lilze did not return directly home after the interview. Instead, Lilze drove to Morrow, Ohio, to visit Jennifer Seebree and Seebree's six-year-old son, Shawn Kelly. Subsequently, they were joined by Seebree's friend, Glenna Hawk.

At approximately 6:00 p.m., Lilze called the Tye residence and informed his grandmother, Frances Tye, the insured's spouse, that he would be late but would be home for dinner. Frances Tye was aware that Eric was driving the Mustang and was calling from outside the Mt. Carmel area. Russell Tye was present in the room when Lilze called.

Lilze and Seebree apparently spent several hours consuming alcoholic beverages. Subsequently, Lilze, Seebree, Hawk and Kelly went for a drive in the Mustang. Lilze originally drove the car. However, at some point, Seebree asked if she could drive and Lilze turned the keys over to her. While Seebree was driving, she lost control of the vehicle, causing it to run off the road. The resulting crash killed Lilze, Seebree and Kelly and injured Hawk. An autopsy report revealed that Seebree's blood alcohol level was .25.

On November 15, 1989, Kelly's estate filed a complaint for wrongful death against Seebree's estate. Subsequently, Kelly's estate filed an amended complaint naming Lilze's estate as an additional defendant. Lilze's estate then filed a cross-claim against Seebree's estate for the wrongful death of Lilze.

On April 2, 1990, Nationwide filed a complaint for declaratory judgment against the estates of Kelly, Seebree and Lilze and against Russell Tye. In its

complaint, Nationwide asked the court to declare that it did not have to provide coverage under Russell Tye's policy for the claims of the estates of Lilze, Seebree and Kelly. After a bench trial, the trial court concluded that, because Lilze and Seebree drove the vehicle without permission at the time of the accident, Nationwide was not obligated to furnish coverage under either the liability or uninsured motorist coverage of Russell Tye's policy. Kelly's estate, Lilze's estate, and Russell Tye filed a timely appeal.

Kelly's estate presents two assignments of error for review, as follows:

### Assignment of Error No. 1:

"The trial court erred as a matter of law in holding no coverage existed under the policy of insurance in question for any liability incurred by the Estate of Eric Lilze to the Estate of Shawn Kelly due to Lilze's negligence."

### Assignment of Error No. 2:

"The trial court's finding that Eric Lilze's use of the covered vehicle was outside the scope of the named insured's permission was against the manifest weight of the evidence."

Lilze's estate and Russell Tye collectively ("Lilze's estate") present two assignments of error for review, as follows:

### Assignment of Error No. 1:

"The court erred as a matter of law in finding that Nationwide is not obligated to furnish coverage under the liability provisions of the subject automobile insurance policy."

### Assignment of Error No. 2:

"The court erred as a matter of law in finding that Nationwide is not obligated to furnish coverage under the uninsured motorist provisions of the subject automobile insurance policy."

Since appellants' first assignments of error are identical, we will consider them together. Appellants argue that because Lilze was a member of the Tye household, he was covered under Russell Tye's policy, regardless of whether he had permission to drive the Mustang at the time of the accident. We find these assignments of error to be well taken.

An insurance policy is a contract and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 262, 472 N.E.2d 1061, 1062. The interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto. Mut. Ins. Co.*

(1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275–276, 436 N.E.2d 1347, 1348–1349; *Value City, Inc. v. Integrity Ins. Co.* (1986), 30 Ohio App.3d 274, 276, 30 OBR 472, 474, 508 N.E.2d 184, 186. In insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless there is something in the contract which would indicate a contrary intention. *Olmstead v. Lumbermen's Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 288, 259 N.E.2d 123, 126. Where the provisions of an insurance policy are clear and unambiguous, courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties. *Gomolka, supra,* 70 Ohio St.2d at 168, 24 O.O.3d at 276, 436 N.E.2d at 1348. However, where the provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, paragraph one of the syllabus.

Under the heading "Auto Liability–Coverage," the policy provides:

"Property damage and bodily injury liability coverage. Under this coverage, if you become legally obligated to pay damages resulting from the ownership, maintenance, use, loading or unloading of your auto, we will pay for such damages. *Anyone living in your household has this protection. Also* protected is any person or organization who is legally responsible for the use of your auto and uses it with your permission. This permission may be expressed or implied. \* \* \* " (Emphasis added.)

■ Applying the plain language of the policy, we find there are two classes of individuals covered: (1) anyone living in the insured's household, *and* (2) any person who is legally responsible for the use of the insured auto and uses it with the insured's permission. Otherwise, the term "also" has no purpose. The "household member" clause is unqualified by any reference to permission and the issue of permission is irrelevant. Therefore, the trial court erred in basing its conclusion that there was no coverage on the issue of permission. Lilze was covered under the policy because he was a member of the Tye household. This holding is in accord with that of other jurisdictions interpreting similar policy language. *Preston v. Tromm* (Apr. 26, 1990), Marion App. No. 9–88–31, unreported, 1990 WL 61748; *State Auto. Mut. Ins. Co. v. Hawk* (Mar. 17, 1986), Stark App. No. CA–6751, unreported, 1986 WL 3922; *Kenyon v. Newton* (1988), 144 A.D.2d 901, 534 N.Y.S.2d 600; *Peerless Ins. Co. v. Vigue* (1975), 115 N.H. 492, 345 A.2d 399; *Oregon Mut. Ins. Co. v. Hollopeter* (1968), 251 Ore. 619, 447 P.2d 391.

Because Lilze is an insured under the policy, Nationwide is required to provide coverage and defense provided Lilze was "using" the covered vehicle.

The policy provides coverage for an insured from liability arising out of the "use" of a covered vehicle. Appellants argue that because Lilze, a covered insured, was present in the vehicle when the liability occurred, he was "using" the vehicle. We agree.

Appellants rely on *Brown v. Kennedy* (1943), 141 Ohio St. 457, 26 O.O. 6, 48 N.E.2d 857, in which the Ohio Supreme Court held in the syllabus: "Where an insurance policy covers one who uses the specified automobile with the permission of the named insured, the insurance company is not relieved of liability by reason of the fact that while the permittee was using the automobile it was being driven by another at the time of the accident." *Brown* involved an accident where Bennett White was driving an automobile with the permission of Dorothy Kennedy, the named insured's daughter. The named insured's daughter was in the car when the accident occurred. The relevant portion of the named insured's policy provided that the policy covered any person using the automobile mentioned in the policy with the permission of the named insured. The court held that Dorothy Kennedy was using the automobile despite the fact that she was not actually driving the car. The court stated that "the words 'using,' 'used,' and 'actual use' do not have the limited meaning of 'operating,' 'operated,' or 'actual operation.' The defense that Bennett White was driving does not negative that fact that Dorothy Kennedy was using the automobile." *Id.*, 141 Ohio St. at 464, 26 O.O. at 9, 48 N.E.2d at 860.

*Brown* clearly stands for the proposition that the term "use" is broader than operating or driving. See, also, *MacLellan v. Motorists Ins. Co.* (June 21, 1990), Cuyahoga App. No. 57169, unreported, 1990 WL 84264. In the present case, Lilze was present in the vehicle when the accident occurred and under the rule expressed in *Brown* he was "using" the vehicle. Accordingly, the accident arose out of the "use" of the covered vehicle by a named insured.

The trial court distinguished *Brown* on the basis that, in *Brown*, Dorothy Kennedy was using the automobile with the permission of the named insured. The trial court specifically held that Lilze was not using the automobile for any purpose for which he had been given permission by the named insured. However, the language of the policy in *Brown*, unlike the policy in the present case, specifically required the permission of the named insured even for a household member. We have already concluded that under the policy in the present case, permission was not a requirement for a household member to be covered, and we find this distinction to be irrelevant.

■ In sum, we conclude that, under the plain language of the policy, Eric Lilze was a covered individual, and the trial court erred by concluding he was not. We would also note that appellee's reliance on the issue of negligent

entrustment is inappropriate in this declaratory judgment action, the purpose of which is to determine insurance coverage. That issue is more appropriately determined in the underlying liability suit. We hold that Nationwide is required to provide a defense for Eric Lilze and to pay any claims against Lilze in the event he should be found liable in the underlying wrongful death suit. Accordingly, both appellants' first assignments of error are sustained.

In its second assignment of error, Kelly's estate claims that the trial court's finding that Lilze's use of the covered vehicle was outside the scope of the named insured's permission was against the manifest weight of the evidence. Since we have already concluded that Lilze was a covered individual regardless of whether he had permission to drive the vehicle, we need not determine this issue. Accordingly, Kelly's estate's second assignment of error is overruled.

In its second assignment of error, Lilze's estate claims that it is entitled to uninsured motorist coverage under Tye's policy for claims it has against Seebree's estate, since Seebree was an uninsured motorist. It argues that the exclusion under the uninsured motorist provisions of the policy for use of a motor vehicle without the permission of the owner is unenforceable. We find this assignment of error to be well taken.

R.C. 3937.18 provides:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom;

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the

accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

The applicable uninsured motorist provisions of the policy provide:

"Under this coverage, we will pay bodily injury damages that you or your legal representative are legally entitled to recover from the owner or driver of an uninsured motor vehicle. Damages must result from an accident arising out of the ownership, maintenance, or use of the uninsured vehicle. Bodily injury means bodily injury, sickness, disease, or death."

As to the claims of Lilze's estate, the Mustang was an uninsured motor vehicle because Seebree was the only party who might be liable for Lilze's death, and Seebree was uninsured. However, under the uninsured motorist provision, the policy contains a specific exclusion for "use of a motor vehicle by an insured without permission of the owner." The trial court concluded that because Lilze was not using the vehicle with the owner's permission, the exclusion applied and Nationwide was "not bound by the uninsured motorists provisions of the subject policy." The trial court made a specific finding of fact that Lilze was driving without permission. This finding was supported by competent, credible evidence and this court will not disturb it. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Therefore, the exclusion, if valid, must apply and uninsured motorist coverage is not available. The key question presented in this assignment of error, then, is whether the exclusion is valid.

The Ohio Supreme Court recently decided *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, where it held in the syllabus:

"An automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law. (*Dairyland Ins. Co. v. Finch* [1987], 32 Ohio St.3d 360, 513 N.E.2d 1324, paragraph two of the syllabus, overruled.)"

In *State Farm*, Percy Alexander had an automobile insurance policy for his Ford Aerostar van with State Farm Automobile Insurance Company, with limits of $50,000/$100,000 for liability and uninsured motorist coverage. On May 7, 1988, Alexander was a passenger in his van, which was being driven by O'Neal Cosey. While being driven by Cosey, the van was involved in a single-vehicle accident, which resulted in Cosey's death and Alexander suffer-

ing severe injuries. At the time of the accident, Cosey had an automobile insurance policy with limits of $12,500 for bodily injury, which was paid by Cosey's insurance company. Alexander sought underinsured motorist coverage from State Farm, which denied coverage due to a "household exclusion" for a motor vehicle insured under the liability provisions of Alexander's policy.

The Ohio Supreme Court found the household exclusion to be invalid. It stated:

"R.C. 3937.18(A)(1) and (2) are premised on the tortfeasor's *legal liability* to the injured insured. * * * Thus, the intent of the statute is to provide uninsured and underinsured motorist coverage for injured persons who have a legal cause of action against a tortfeasor but who are uncompensated because the tortfeasor is either (1) not covered by liability insurance or (2) covered in an amount that is less than the insured's uninsured motorist coverage.

"State Farm's household exclusion ignores the statute's basic premise, to wit: the tortfeasor's legal liability to the insured. The State Farm policy eliminates uninsured and underinsured motorist coverage based solely on the fact that the tortfeasor is driving the insured's automobile. By excluding coverage for torts that occur in the insured's vehicle, State Farm seeks to escape from part of the uninsured motorist coverage that R.C. 3937.18 requires it to provide.

"In essence State Farm's exclusion is an attempt to change Ohio's tort law, by contractual definition, in order to circumvent its duty to provide uninsured and underinsured motorist coverage pursuant to R.C. 3937.18. This it cannot do. Accordingly, State Farm's exclusion is unenforceable because it conflicts with R.C. 3937.18." See, also, *Barr v. Ins. Co. of N. Am.* (1991), 72 Ohio App.3d 595, 595 N.E.2d 531; *Ross v. Nationwide Mut. Ins. Co.* (Sept. 27, 1990), Franklin App. No. 90AP–165, unreported, 1990 WL 140549.

■ In the present case, Lilze's estate is legally entitled to recover damages for the wrongful death of Lilze if Seebree's conduct is determined to be tortious in the underlying wrongful death suit. See R.C. 2125.02. However, it will be uncompensated because Seebree had no liability insurance. Therefore, under the provisions of R.C. 3937.18(A), Lilze's estate is entitled to uninsured motorist coverage. If it is determined that Lilze's estate has a legal right to recover from Seebree, then the issue of whether Lilze was driving with permission is irrelevant and the exclusion contravenes the provisions of the statute. Accordingly, pursuant to *Alexander, supra,* we conclude that the exclusion for use of a motor vehicle without permission is invalid and Lilze's estate is entitled to uninsured motorist coverage.

■ Nationwide argues that because this case was pending before *Alexander* was decided, *Alexander* should not be applied retroactively. We disagree. The general rule is that an Ohio Supreme Court decision overruling a former

decision is retrospective in operation. " * * * [T]he effect is not that the former was bad law, but that it was never the law." *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 411, 129 N.E.2d 467, 468, appeal dismissed (1956), 352 U.S. 804, 77 S.Ct. 30, 1 L.Ed.2d 38. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision. *Peerless, supra*, at 210, 57 O.O. at 411, 129 N.E.2d at 468. We do not find that this exception applies since the contractual rights of the parties were always subject to the provisions of R.C. 3937.18 and the policies underlying it. Nationwide's claim that because insurance policies involve contractual rights, Supreme Court decisions could never be applied retroactively in insurance cases is erroneous. See *Blackburn v. Hamoudi* (Feb. 8, 1991), Franklin App. No. 89AP–1102, unreported, 1991 WL 16137; *Nationwide Mut. Ins. Co. v. Zeiter* (Dec. 10, 1990), Seneca App. Nos. 13–89–27 and 13–89–28, unreported, 1990 WL 197918.

In sum, we conclude that the trial court erred by finding that Nationwide was not obligated to provide coverage under the uninsured motorist provisions of Russell Tye's policy. Accordingly, Lilze's estate's second assignment of error is sustained.

*Judgment reversed*
*and cause remanded.*

KOEHLER, P.J., WALSH and HENDERSON, JJ., concur.

JOHN W. HENDERSON, J., of the Clark County Court of Common Pleas, sitting by assignment.