21 F.3d 427
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 FEDERAL KEMPER INSURANCE COMPANY, Plaintiff-Appellant,
v.
Dale CALDWELL and Nancy Caldwell, Defendants-Appellees.
WEST VIRGINIA INSURANCE GUARANTY ASSOCIATION, Intervenor-Appellee,
v.
INDIANA INSURANCE COMPANY, Third-Party Defendant.
 No. 93-3126.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1994.
 
 Before: JONES and BOGGS, Circuit Judges; and FEIKENS, Senior District Judge.
 PER CURIAM.
 
 
 1
 Federal Kemper Insurance Co. appeals an adverse ruling by the district court on cross-motions for summary judgment. Federal Kemper's complaint sought a declaratory judgment as to the scope of coverage of an insurance policy issued to Dale and Nancy Caldwell. Jurisdiction is predicated upon diversity of citizenship, and Ohio substantive law applies. For the reasons discussed herein, we affirm the judgment of the district court.
 
 
 2
 * Federal Kemper, an Illinois corporation, insures the Caldwells, Nancy and Dale, who are Ohio citizens. The automobile insurance policy provides, inter alia, uninsured motorist bodily injury coverage. Christina James (nee Caldwell), the daughter of Dale and Nancy, specifically was excluded from coverage under the policy, effective December 23, 1988. The exclusion in the policy's endorsement states: "It is agreed that such insurance as is afforded by this policy does not apply with respect to any claim arising from accidents which occur while any automobile is being operated by CHRISTINA CALDWELL." The declarations page of the policy states: "This policy does not provide coverage for: CHRISTINA M. CALDWELL."
 
 
 3
 Christina was operating Dale's car on July 24, 1990, with Nancy as a passenger, when an accident occurred in Huntington, West Virginia. Teresa A. Albright, a West Virginia resident and the driver of the car that collided with the Caldwells' car, was insured by Industrial Fire and Casualty Insurance Co., but that company was liquidated by Illinois state court in March 1991, making Albright an uninsured motorist for the accident involved here. Nancy filed a claim against Federal Kemper for injuries resulting from the car crash, under the uninsured motorist provision of her policy. Federal Kemper denied those claims on the ground that the Caldwells' policy affords no coverage in this case because Christina, a named excluded driver, was operating the vehicle at the time of the accident.
 
 
 4
 The West Virginia Insurance Guaranty Association, prompted by the liquidation of Industrial Fire, intervened as a party-defendant. The Association guarantees the insurance liabilities of insolvent insurance carriers in West Virginia. Nancy can file a claim against the Association, but only if all coverage available under other insurance policies, including the policy issued by Federal Kemper, is exhausted first. The Caldwells also brought a third-party complaint against Indiana Insurance Co., the insurer of Christina's husband. All parties moved for summary judgment. The district court ruled in favor of the Caldwells and the Association in Federal Kemper's suit against the Caldwells. In the Caldwells' suit against Indiana Insurance, the district court granted Indiana Insurance's motion. The Caldwells do not appeal the granting of summary judgment to Indiana Insurance, and Indiana Insurance is not a party to this appeal.
 
 
 5
 The district court determined that there was an ambiguity between the language of the declarations page and the language in the endorsement. The district court found it "unlikely" that the Caldwells and Federal Kemper intended to deny coverage for injuries sustained by Nancy as a result of the negligence of an uninsured motorist "some years later when her automobile was being operated by her emancipated married daughter." Given the ambiguity, the district court construed the policy in favor of the insured, Nancy, concluding that coverage was not excluded here. The district court also determined that the named driver exclusion contravened the policy underlying the Ohio uninsured motorist statute and thus the insurance policy should not be interpreted to deny Nancy coverage.
 
 II
 
 6
 This court reviews the grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). The material facts of this case are not in dispute, and, indeed, the parties stipulated to the facts in the district court. A decision in this case may be made as a matter of law.
 
 
 7
 The Ohio Revised Code mandates the offering of uninsured and underinsured motorist coverage to the same extent that coverage for automobile liability is provided. Ohio Rev.Code Sec. 3937.18. However, the insured may reject such coverage or opt for a lower amount of coverage. Ibid. There is no dispute here that Albright is, because of Industrial's liquidation, an uninsured motorist. The issue is whether the Caldwells rejected uninsured motorist coverage in their policy.
 
 
 8
 Under Ohio law, insurance policies are interpreted using rules of construction and interpretation applicable to contracts generally. Nationwide Ins. Co. v. Tobler, 80 Ohio App.3d 560, 563 (1992). The construction of a written contract is a matter of law. Nationwide Ins. Co. v. Johnson, 84 Ohio App.3d 106, 108 (1992). Words and phrases are to be given their ordinary meaning, unless something in the contract indicates a contrary intention. Tobler, 80 Ohio App.3d at 564. "[W]here the provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Ibid.
 
 
 9
 With respect to Sec. 3937.18, the " 'uninsured motorist statute should be construed liberally in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists.' " Ady v. West Am. Ins. Co., 69 Ohio St.2d 593, 598 (1982) (quoting Curran v. State Auto. Mut. Ins. Co., 25 Ohio St.2d 33, 38 (1971)). Ady reviewed the purposes underlying the uninsured motorist statute, stating that it was " 'designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated,' " id. at 595 (quoting Abate v. Pioneer Mut. Cas. Co., 22 Ohio St.2d 161, 165 (1970)), and " 'to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance.' " Ibid. (quoting Bartlett v. Nationwide Mut. Ins. Co., 33 Ohio St.2d 50, 52 (1973)). The Ohio Supreme Court justified its construction of Sec. 3937.18 by noting that the "cost of this broad coverage is passed on to all insured drivers as a necessary means of achieving the public policy of protecting persons from losses due to uninsured motorists." Id. at 599.
 
 
 10
 Given the strong public policy favoring uninsured motorist coverage, for a rejection of such coverage to be held valid, it must be "express" and "overt." Abate, 22 Ohio St.2d at 161, 163; Grange Mut. Cas. Co. v. Volkmann, 54 Ohio St.2d 58 (1978). The rejection or exclusion should be "conspicuous so that a customer is aware of its existence [and] should be clear and easily understood by a lay person. Also there should be evidence that the customer agreed to the restriction on coverage." Ady, 69 Ohio St.2d at 597. Where uninsured motorist coverage is not expressly rejected, provisions that "purport to reduce the amount of [uninsured motorist insurance] recovery are unenforceable as against public policy." Bartlett, 33 Ohio St.2d at 50; Grange, 54 Ohio St.2d at 63. If the coverage is not expressly rejected, it may not be eliminated by other means in the insurance contract. See Westerheide v. State Farm Ins. Cos., 86 Ohio App.3d 557, 561 (1993) ("Unless the insured expressly rejects uninsured motorist coverage, it is provided for the insured by operation of law."). The exclusion must "comply with the purpose of [the] statute." Ady, 69 Ohio St.2d 593.
 
 
 11
 In State Farm Auto. Ins. Co. v. Alexander, 62 Ohio St.3d 397 (1992), the Ohio Supreme Court declared that "[a]n automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by [Sec.] 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law." See also Bartlett, 33 Ohio St. at 53 ("Private parties are without power to insert enforceable provisions in their contracts of insurance which would restrict coverage in a manner contrary to the intent of the statute."). The Ohio Supreme Court recently confirmed its interpretation of Sec. 3937.18 in Alexander in Stanton v. Nationwide Mut. Ins. Co., 68 Ohio St.3d 111 (1993), holding that an exclusion in the uninsured motorist coverage of an automobile liability policy that states that uninsured motorist coverage does not apply to the use of any motor vehicle by an insured to carry persons or property for a fee is unenforceable.
 
 
 12
 The issue in this case is whether the endorsement in the Caldwells' policy constitutes an express rejection of uninsured motorist coverage. The district court found an ambiguity between the exclusionary language on the declarations page and the exclusionary language in the endorsement; the district court therefore construed the policy not to exclude uninsured motorist coverage. However, even if there is no ambiguity between the two, the exclusionary language in the endorsement does not on its face exclude uninsured motorist coverage. In light of the Ohio courts' extremely strong policy with respect to the clarity and explicitness required for a rejection of such coverage to be effective, the uninsured motorist coverage was not rejected.
 
 
 13
 As an Ohio court of appeals has noted, the "insurer's burden [of showing rejection of uninsured motorist coverage] is generally met by showing that the customer signed a separate provision rejecting equivalent amounts of uninsured motorist coverage, that the language in the provision was clear and conspicuous, and that the signature was not the result of restraint, disability or misunderstanding." Sachs v. American Economy Ins. Co., 78 Ohio App.3d 440, 447 (1992). In Sachs, the insurer provided a form, entitled "Uninsured/Underinsured Motorists Coverage Reduction/Rejection Form," to the insured to complete. The court held that summary judgment was inappropriate because there was a factual dispute as to whether the insured had completed the form. No such form was completed in this case.
 
 
 14
 In Ullrich v. Auto-Owners Ins. Co., 81 Ohio App.3d 196, 197-98 (1991), an Ohio court of appeals held that an exclusion was sufficiently clear to be valid; the exclusion was detailed under a section of the contract entitled "Uninsured Motorist Coverage." Here, in contrast, in the "Uninsured Motorists Coverage" section of the Caldwells' Federal Kemper policy, the "Exclusions" are as follows:
 
 
 15
 A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person:
 
 
 16
 1. While occupying, or when struck by, any motor vehicle owned by you or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
 
 
 17
 2. If that person or the legal representative settles the bodily injury claim without our consent.
 
 
 18
 3. While occupying your covered auto when it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.
 
 
 19
 4. Using a vehicle without the permission of the owner to do so.
 
 
 20
 B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any workers' compensation, disability benefits or similar law.
 
 
 21
 (Emphasis in original.) None of these provisions applies to the facts in Nancy's case. In addition, the uninsured motorist coverage section appears to be a standard form, suggesting that there was no negotiation or bargaining as to excluding any uninsured motorist coverage.
 
 
 22
 Federal Kemper relies on several unreported decisions from Ohio courts of appeals in arguing that the named- driver exclusion in the Caldwells' policy should be held valid and enforceable here. However, those cases are not persuasive inasmuch as they were decided before Alexander, rely on authority explicitly overruled by Alexander (i.e., Dairyland Ins. Co. v. Finch, 32 Ohio St.3d 360 (1987) (reasonable exclusionary clauses valid)), or are unpublished. The Ohio Supreme Court has made clear that an insurer may not easily override the policy underlying Sec. 3937.18 through exclusionary language in an insurance policy. We are bound by the Ohio Supreme Court's interpretation of Sec. 3937.18 in this case, however harsh or contrary to normal contract law that result may be. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938).
 
 III
 
 23
 The judgment of the district court is AFFIRMED.