[Cite as *Thiemens v. Grange Mut. Cas. Co.*, 2013-Ohio-1643.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| HEINZ THIEMENS | JUDGES: |
| Plaintiff-Appellant | Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J. |
| -vs- | Hon. Craig R. Baldwin, J. |
| GRANGE MUTUAL CASUALTY CO. | Case No. 12-COA-027 |
| Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Ashland County Court of Common Pleas, Case No. 10-CIV-497

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 11, 2013

APPEARANCES:

For Appellant:

JOHN F. BURKE III
Burkes Law LLC
614 W. Superior Avenue
Rockefeller Building, Suite 1500
Cleveland, Ohio 44113

For Appellee:

FRANK G. MAZGAI
R. BRIAN BORLA
Hanna, Campbell & Powell LLP
P.O. Box 5521
3737 Embassy Parkway
Akron, Ohio 44334

*Baldwin, J.*

{¶1}   Plaintiff-appellant Heinz Thiemens appeals from the November 22, 2011 and June 22, 2012 Judgment Entries of the Ashland County Court of Common Pleas.

**STATEMENT OF THE FACTS AND CASE**

{¶2}   Appellant Heinz Thiemens is the owner of a building in Loudonville, Ohio that he purchased in 1999. The building, which is over 100 years old, has a 3 tier brick wall system. Only one row of bricks is observable from the façade.

{¶3}   At all relevant times, appellant's building was insured by appellee Grange Mutual Casualty Company under a commercial general liability policy issued to appellant. The policy provided that appellee "will pay for direct physical loss or damage to Covered Property at the premises described in the Declaration caused by or resulting from any Covered Loss."

{¶4}    The policy issued by appellee to appellant had a Causes of Loss-Special Form that states, in relevant part, as follows:

{¶5}   "**A. Covered Causes of Loss**

{¶6}   "When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is

{¶7}   "**1.**  Excluded in Section **B.**, Exclusions; or

{¶8}   "**2.** Limited in Section **C.**, Limitations, that follow

{¶9}   "**B. Exclusions**…

{¶10} "**2.** We will not pay for loss or damage caused by or resulting from any of the following….

{¶11} **"k.** Collapse, except as provided for in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss."

{¶12} The policy further states, in relevant part, as follows:

{¶13} "D. **Additional Coverage-Collapse**

{¶14} "The term Covered Cause of Loss includes the Additional Coverage-Collapse as described and limited in **D.1** through **D.5** below.

{¶15} "**1**. With respect to buildings

{¶16} "**a**. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose,

{¶17} "**b**. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse,

{¶18} "**c.** A part of the building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building,

{¶19} "**d**. A building that is standing or any part of the building is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

{¶20} "**2.** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following

{¶21} "**a.** The "specified cause of loss" or breakage of building glass, all only as insured against in the Coverage Part,

{¶22} "**b.** Decay that is hidden from view, unless the presence of such damage is known to an insured prior to collapse,…"

{¶23} Prior to May 27, 2010, Curtis Young, the Village Administrator for Loudonville, observed that the exterior wall on the south side of appellant's building was in an unsafe condition and became concerned that the façade of the building might come loose. Young took photographs of the building. The photographs show that the wall was bowing and that bricks and mortar were deteriorating and starting to fall. On May 27, 2010, Young composed a letter to appellant. The letter stated, in relevant part, as follows: "Upon inspection of the exterior brick wall on the south side of your building …on May 26[th], it has been determined by the Village Police Chief, Fire Chief and Codes Enforcement Officer that this wall is unstable and in need of immediate repair." The inspection had occurred after the photographs were taken.

{¶24} On May 29, 2010, before the letter, which had been submitted to the Village Solicitor for review, was sent, the south wall of appellant's building collapsed. Appellant was told by the Village Administrator, Mayor, Police Chief and Fire Chief that they were ordering the demolition of the southernmost section of his building. The demolition was completed on May 29th or 30th of 2010.

{¶25} After the wall of the building collapsed, appellant contacted his insurance agent and was assigned an insurance adjuster. The adjuster, Jeff Travis, advised appellant that appellee had retained an engineer, Mike Richardson from American Structurepoint, Inc., to investigate the cause of the collapse.    Richardson inspected

the building on June 11, 2010, reviewed the photographs taken by Young and prepared a report. In his July 9, 2010 report, he opined that the collapse of the south wall of appellant's building "was likely the result of failure of severely deteriorated brick masonry along the base of the collapsed wall." He further opined that the deterioration "was likely due to a lack of maintenance of the masonry construction" and that the deterioration "likely indicates long term damage from surface water flowing adjacent to the wall on the street."

{¶26} After receiving Richardson's report, Travis verbally advised appellant that there was no coverage under the policy. In addition, Travis, on or about July 16, 2010, sent a letter to appellant. The letter stated, in relevant part, as follows: "With the information available to us there is a possibility that the loss was caused by decay of the masonry or masonry jointing along the lower portion of the outside south wall of the building which was not hidden from view. Since this decay was not hidden from view, it does not meet the requirements set forth in paragraph b. that the decay be hidden from view… In conclusion, with respect to the collapse (itself), our investigation has been unable to find a cause of the collapse to have been caused by any of the items listed in paragraphs a. through f., or any other provision of the policy. "

{¶27} Subsequently, on November 18, 2010, appellant filed a complaint against appellee, alleging bad faith (First Cause of Action), breach of contract (Second Cause of Action), tortuous withholding of insurance coverage (Third Cause of Action), and breach of covenant of good faith and fair dealing (Fourth Cause of Action). Appellee filed an answer on December 10, 2010, asserting numerous defenses.

{¶28} On September 30, 2011, appellee filed a Motion for Summary Judgment, which was supported by the affidavit of Michael Richardson. In response, appellant, on November 7, 2011, filed a Brief in Opposition to the motion and a Motion to Strike the Affidavit of Michael Richardson. Appellant, in the Motion to Strike, alleged that Richardson's affidavit should be stricken because Richardson had failed to fully respond to the subpoena duces tecum issued to him and his affidavit, which was filed on September 30, 2011, contained opinions not contained in his expert report.

{¶29} Pursuant to a Judgment Entry filed on November 22, 2011, the trial court granted appellee's Motion to Summary Judgment with respect to appellant's First, Second and Third Causes of Action and dismissed the same. The trial court also ordered that the jury trial scheduled for December 20, 2011 would proceed on the Fourth Cause of Action only.

{¶30} Appellee, on December 9, 2011, filed an application requesting that the trial court rule on the Civ.R. 12(B)(6) defense that it had raised in its answer.

{¶31} Appellant then filed a Notice of Appeal on December 16, 2011. As memorialized in a Judgment Entry filed on April 17, 2012 in Case No. 11-COA-052, this Court dismissed appellant's appeal because the order appealed from was not a final, appealable order.

{¶32} Pursuant to a Judgment Entry filed on June 22, 2012, the trial court ordered that appellant's Fourth Cause of Action be dismissed for failure to state a claim upon which relief can be granted.

{¶33} Appellant now appeals from the trial court's the November 22, 2011 and June 22, 2012 Judgment Entries, raising the following assignments of error:

{¶34} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶35} "II. THE TRIAL COURT ERRED IN FINDING THAT GRANGE HAD NOT BREACHED THE CONTRACT.

{¶36} "III. THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THE INSURANCE POLICY WAS NOT ILLUSORY.

{¶37} IV. THE TRIAL COURT ERRED WHEN IT FOUND NO BAD FAITH ON BEHALF OF GRANGE.

{¶38} V.  THE TRIAL COURT ERRED WHEN IT FAILED TO RULE ON PLAINTIFF-APPELLANT'S MOTION TO STRIKE THE AFFIDAVIT OF APPELLEE'S EXPERT OR ABUSED ITS DISCRETION IN IMPLICITLY DENYING IT.

I – IV

{¶39} Appellant, in his first four assignments of error, argues that the trial court erred in granting summary judgment in favor of appellee on his claims alleging breach of contract and bad faith.  We disagree.

{¶40} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, we must refer to Civ.R. 56 which provides, in pertinent part: " * * *Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation…, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.* * * "

{¶41} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment, bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997–Ohio–259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264.

{¶42} Appellant argues, in part, that the trial court erred in finding that appellee did not breach its insurance contract with appellant.

{¶43} "An insurance policy is a contract and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 262, 472 N.E.2d 1061, 1062. The interpretation and construction of insurance policies is a matter of law to be

determined by the court using rules of construction and interpretation applicable to contracts generally. *Gomolka v. State Auto. Mut. Ins. Co.* 1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275–276, 436 N.E.2d 1347, 1348–1349; *Value City, Inc. v. Integrity Ins. Co.* (1986), 30 Ohio App.3d 274, 276, 30 OBR 472, 474, 508 N.E.2d 184, 186. In insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless there is something in the contract which would indicate a contrary intention. *Olmstead v. Lumbermen's Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 288, 259 N.E.2d 123, 126. Where the provisions of an insurance policy are clear and unambiguous, courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties. *Gomolka, supra,* 70 Ohio St.2d at 168, 24 O.O.3d at 276, 436 N.E.2d at 1348. However, where the provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, paragraph one of the syllabus." *Nationwide Insurance Company v. Tobler*, 80 Ohio App.3d 560, 563–564, 609 N.E.2d 1318 (12th Dist. 1992).

{¶44} Appellant contends that the insurance policy issued to him by appellee did not specifically define the term "collapse" and that, therefore, such term must be given its plain and ordinary meaning. Appellant asserts that the building's collapse occurred prior to May 29, 2010  as evidenced by the bowing in the wall and  the fact that bricks and mortar were  deteriorating as shown in Young's photographs. Appellant

specifically cites to this Court's Opinion in *Zanesville, LLC v. Motorists Mut. Ins. Co.,* 5th Dist No. CT2006-0043, 2007-Ohio-6448.

{¶45} In the *Zanesville* case, the word "collapse" was not defined in the insurance policy. This Court applied the plain and ordinary meaning of the term "collapse" and found that the falling down of individual bricks, concrete and mortar could constitute collapse.

{¶46} However, in the case sub judice, as is stated above, the subject policy, in (D)(1.)(a), defined "collapse" as meaning "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." As defined in the policy, the term "collapse" does not include brick and mortar deterioration. In the case sub judice, appellant's building did not abruptly fall down until May 29, 2010.

{¶47} The next issue for consideration is whether the collapse on May 29, 2010 was covered by the policy. The crux of this case is whether or not D(2)(b) applies. Such section states as follows: "**2.** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following…**b.** Decay that is hidden from view, unless the presence of such damage is known to an insured prior to collapse,…"

{¶48} We find that the trial court did not err in granting summary judgment in favor of appellee on appellant's breach of contract claim because the undisputed facts show that the collapse was not caused by decay hidden from view. As is stated above, photographs taken by Curtis Young weeks prior to the collapse clearly show that the

wall was bowing and that bricks and mortar were deteriorating and falling. As noted by the trial court, the undisputed facts show that the deterioration, which Michael Richardson opined caused the fall along with decay, was "clearly visible from the exterior of the building,…" There was evidence that the Village of Loudenville was so concerned about the condition of the building that Young composed a letter to send to appellant about the building, although such letter was not sent prior to May 29, 2010. Thus, the deterioration/decay was not hidden from view. We concur with appellee that there was, therefore, no coverage under the policy and that appellee, therefore, did not breach its contract with appellant.

{¶49} Appellant also asserts that, even if appellee did not breach the insurance policy issued to him by appellee, then the "purported" collapse coverage was illusory. An insurance provision is illusory when it appears to grant a benefit to the insured, although in reality it does not. *Coleman v. Progressive Preferred Ins. Co.,* 1st Dist. No. C-070779, 2008-Ohio-3568.

{¶50} In the case sub judice, the insurance policy issued to appellant was not illusory because several circumstances would give rise to coverage for collapse under the policy. As noted by the trial court, sudden collapses caused by excessive weight, hidden insect or vermin damage, hidden building decay and collapse during renovation all would be covered under the policy. The policy was not, therefore, illusory because it did grant a benefit to the insured, who was appellant.

{¶51} Appellant next maintains that the trial court erred when it found no evidence of bad faith and granted summary judgment in favor of appellee on appellant's bad faith claim. Appellant alleged, in such claim, that appellee had acted in

bad faith in adjusting his claim. Having found that the trial court did not err in finding that appellee did not breach its contract with appellant because there was no coverage under the policy, we find that such claim is moot.

{¶52} Based on the foregoing, appellant's first, second, third and fourth assignments of error are overruled.

V

{¶53} Appellant, in his fifth assignment of error, argues that the trial court either failed to rule on appellant's Motion to Strike the affidavit of defense expert Michael Richardson or abused its discretion in implicitly denying such motion.

{¶54} "If a trial court fails to mention or rule on a pending motion, the appellate court presumes that the motion was implicitly overruled." *Swinehart v. Swinehart,* 5th Dist. No. 06–COA–020, 2007–Ohio–6174, ¶ 26. Thus, because the trial court did not rule on the Motion to Strike, we presume that the motion was overruled.

{¶55} The decision whether to grant or deny a motion to strike is governed by the abuse of discretion standard of review. *Ohio Farm Bureau Federation, Inc. v. Amos,* 5th Dist. No. 05 COA 031, 2006–Ohio–1512, ¶ 41. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶56} In the case sub judice, appellee filed the affidavit of Michael Richardson in support of its Motion for Summary Judgment. Thereafter, on November 7, 2011, appellant filed a Motion to Strike Richardson's affidavit. Appellant, in his motion, argued that the affidavit should be stricken because "Mr. Richardson admittedly failed

to fully respond to the subpoena duces tecum issued to him in this case and his affidavit contains opinions not contained in his expert report."

{¶57} Appellant specifically asserts that he discovered, during Richardson's September 21, 2011 deposition, that Richardson had not fully responded to appellant's subpoena, which was issued on or about January 10, 2011 to American Structurepoint, Richardson's employer. The subpoena had requested all records relating to the May 29, 2010 incident.

{¶58} Appellant specifically contends that Richardson purposely failed to provide his handwritten field notes, any information relative to his company's Vision computer system, his company's billing information and his time records for the project. The Vision system contains project-related information such as the identity of the client, the property location and contact information. During his deposition, Richardson testified that he had handwritten field notes that he had taken during his investigation of the site. Richardson further testified that he believed that he had submitted all of the information that he had in response to the subpoena and that his failure to provide the handwritten field notes was oversight on his part. He stated that he would make appellant's counsel a copy of such notes during a break in the deposition. Richardson further testified that he had provided all of the information available in his company's Vision computer system in response to the subpoena. With respect to the billing and time records, he testified that he did not provide the same because it would require running special reports on Vision.

{¶59} We concur with appellee that appellant never requested, after learning of the alleged missing information, that Richardson supplement his response to the

subpoena. Moreover, appellant, in his Motion to Strike, never indicated that striking the affidavit was necessary because the alleged missing information was required to respond to appellee's Motion for Summary Judgment and/or Richardson's affidavit.

{¶60} As is stated above, appellant also asserts that the trial court erred in not striking Richardson's affidavit because it contains opinions not contained in his expert report. Appellant specifically takes issue with paragraph 11 of Richardson's affidavit. Richardson, in paragraph 11, stated as follows: "Based upon my investigation, experience, education and training, and to a reasonable degree of engineering certainty, it is my opinion that the deterioration and decay that caused the south wall to collapse is visible to the naked eye as depicted in the photographs taken by the Village of Loudenville." Appellant notes that Richardson, in his July 9, 2010 report, did not state that the deterioration and decay were visible to the naked eye.

{¶61} However, Richardson, in his July 9, 2010 report, stated that he had reviewed the photographs taken by the Village of Loudenville. The photographs clearly showed that the wall was bowing and that bricks and mortar were deteriorating. Moreover, during his September 21, 2011 deposition, Richardson testified that it was his opinion that the collapse of the wall was likely caused by severely deteriorated brick masonry and that the severely deteriorated brick masonry could be seen (i.e. was visible) in the photographs taken by the Village. Richardson was subject to cross-examination by appellant regarding his opinion that the deterioration was visible in the photographs.

{¶62} Based on the foregoing, we find that the trial court did not abuse its discretion in denying the Motion to Strike. The trial court's decision was not arbitrary, unconscionable or unreasonable.

{¶63} Appellant's fifth assignment of error is, therefore, overruled.

{¶64} Accordingly, the judgment of the Ashland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, J. concur.

_____
HON. CRAIG R. BALDWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE

CRB /dr

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

Heinz Thiemens

    Plaintiff - Appellant

-vs-

Grange Mutual Casualty Co.

    Defendant - Appellee

:
:
:
:      JUDGMENT ENTRY
:
:
:
:      Case No.   12-COA-027
:
:
:
:

For the reasons stated in our accompanying Opinion on file, the judgment of the Ashland County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____
HON. CRAIG R. BALDWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE