OPINION
Kyle J. Pirnat ("Pirnat") and Nationwide Mutual Insurance Company ("Nationwide"), appellants, appeal an April 20, 1998 judgment of the Franklin County Court of Common Pleas granting a motion for summary judgment in favor of Landmark Insurance Company ("Landmark"), appellee. We affirm.
On April 7, 1995, Pirnat, a member candidate of the Ohio State University Chapter of the Beta Theta Pi Fraternity, and approximately twenty-eight other active members and/or member candidates of the chapter traveled to the Auburn University Chapter of the Beta Theta Pi Fraternity in Auburn, Alabama. Prior to the trip, John Tate, who was the Pledge Educator for the Ohio State University Chapter of the Beta Theta Pi Fraternity, and Dan Paul, an active member of the Ohio State University Chapter of the Beta Theta Pi Fraternity, rented two vans from Hertz for use during the trip.
Pirnat and the other members of the fraternity arrived at Auburn University and spent the weekend there. Prior to leaving Auburn University on April 9, 1995 to return to Columbus, Ohio, John Tate asked Pirnat to drive one of the vans back to Ohio, and Pirnat agreed. As Pirnat and some of the other members of the Fraternity were travelling northbound on Interstate 85 between Legrange and Atlanta, Georgia, Pirnat lost control of the vehicle, and the vehicle flipped over. During the accident, John Tate was thrown from the van and sustained injuries.
On January 23, 1997, John Tate and his parents, Jo and Vinson Tate, ("plaintiffs"), filed a complaint for damages against Pirnat; Nationwide, Pirnat's automobile liability insurer; State Farm Insurance Company, John Tate's automobile liability insurer; and Blue Cross Blue Shield Mutual of Ohio, which paid medical benefits on behalf of John Tate. On June 24, 1997, Pirnat filed a third-party complaint against Dan Paul, the Beta Theta Pi Chapters of Auburn University, the Ohio State University, and the national office of the Beta Theta Pi Fraternity located in Oxford, Ohio. On October 17, 1997, Pirnat filed an amended complaint naming Landmark, the insurer for the Beta Theta Pi Fraternity, as the sole third-party defendant. Pirnat claimed that as a member candidate of the Ohio State University of the Beta Theta Pi Fraternity he was entitled to coverage under the Landmark insurance policy. On November 17, 1997, plaintiffs voluntarily dismissed State Farm Insurance Company from the case.
On December 18, 1997, plaintiffs moved for summary judgment as to liability against Pirnat. On December 22, 1997, Pirnat moved for summary judgment against Landmark on the issue of his coverage under the insurance policy. On January 8, 1998, Landmark moved for summary judgment against Pirnat, claiming that the policy did not provide coverage to Pirnat for this accident.
On March 25, 1998, the trial court filed its decision in which it (1) overruled plaintiffs' motion for summary judgment as to liability; (2) overruled Pirnat's motion for summary judgment as to insurance coverage; and (3) sustained Landmark's motion for summary judgment, finding that Landmark's policy with the Beta Theta Pi Fraternity did not cover Pirnat for the loss. The judgment entry on the trial court's decision was filed on April 20, 1998.
Subsequently, the plaintiffs settled their claims against Pirnat and Nationwide. On July 13, 1998, plaintiffs executed a release whereby they agreed to allow Pirnat and Nationwide to pursue any subrogation rights they may have against any insurance company that may be liable for the injuries sustained by John Tate.
On August 21, 1998, a notice of dismissal was filed, dismissing Pirnat, Nationwide, and Blue Cross Blue Shield, and incorporating the terms of this release. Appellants Pirnat and Nationwide jointly appealed the summary judgment granted in favor of Landmark. Appellants assert the following assignment of error:
 THE TRIAL COURT ERRED IN SUSTAINING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BECAUSE APPELLEE'S POLICY OF INSURANCE WITH THE BETA THETA PI FRATERNITY CLEARLY COVERS THE LOSS AT ISSUE IN THIS MATTER.
Appellants argue that the trial court erred in granting summary judgment to Landmark insurance. Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100,103.
Appellants argue that Endorsements #010, #021, and #022 to the Landmark insurance policy provide coverage to Pirnat as a member candidate of the Beta Theta Pi Fraternity and that Endorsement #011 and #012 do not exclude Pirnat from coverage. Landmark responds that the trial court correctly interpreted these endorsements to the insurance contract and correctly ruled that Pirnat was not entitled to coverage from Landmark.
Because an insurance policy is a contract, the relationship between the insurer and the insured is purely contractual in nature. Nationwide Mut. Ins. Co. v. Marsh (1984),15 Ohio St.3d 107, 109. As a contract, the interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. Gomolka v. State Auto. Mutl. Ins. Co. (1982), 70 Ohio St.2d 166, 167-168. In interpreting the language of an insurance policy, the words and phrases are to be given their plain and ordinary meaning unless there is something in the contract that would indicate a contrary intention. Olmstead v. Lumbermens Mutl. Ins. Co. (1970), 22 Ohio St.2d 212,216. When the language is clear and unambiguous, courts cannot alter the provision of the policy and may not stretch or constrain unambiguous provisions to reach a result not intended by the parties. Gomolka, at 168. To determine if language in an insurance contract is ambiguous, the court must determine whether that language is "reasonably susceptible of more than one interpretation." King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus.
The trial court found that the plain reading of Endorsements #022 and #010 indicated that Beta Theta Pi General Fraternity located in Oxford, Ohio was the "Named Insured" of the insurance contract. The court then found that because Pirnat was not acting within the scope of his duties in regard to Beta Theta Pi General Fraternity in Oxford, Ohio, Pirnat was not a "person insured" under the policy pursuant to Endorsement #022. Because he was not a "person insured" under the Landmark insurance policy, the trial court found Pirnat was not entitled to coverage, and Landmark had no duty to defend against plaintiffs' claims in the action.
Our analysis of the insurance contract is different than the analysis utilized by the trial court, but we reach the same result. Initially, it is important to understand the nature of the insurance policy at issue in the present case. The Landmark policy at issue is a Commercial General Liability Policy, which contains exclusions in Section II(C) for bodily injury or property damage arising out of the ownership, entrustment, maintenance, operation, use, loading, or unloading of (1) any automobile owned, operated, or rented by or loaned to any insured, and (2) any automobile operated by any person in the course of his employment by any insured. However, Endorsement #11 states that it replaces the exclusions provided in Section II(C), in that automobile liability coverage is provided with regard to hired and nonowned automobiles subject to certain other exclusions. The present case arises out of the use of a rental van being operated by Pirnat. Thus, because Endorsement #11 modifies the Commercial General Liability Policy form as it applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto," our analysis must necessarily focus on Endorsement #11.
Endorsement #11 is entitled "Hired and Non-Owned Auto Liability" and states in its opening paragraph that:
 The insurance provided under Section I, Insuring Agreement applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business.
(Emphasis added.) Because Pirnat was operating the van, he was clearly in "use" of the vehicle, as contemplated by the opening paragraph of Endorsement #11. Further, a "hired auto" is defined in Endorsement #11 as "any `auto' you lease, hire, or borrow." (Emphasis added.) The van in question was leased, and, in that respect, the van would fall under the definition of "hired auto." However, "you" is not defined for the purposes of the definition of "hired auto," and "you and your employees" is not defined for the purposes of the opening paragraph of Endorsement #11.
Subsection (2) of Endorsement #11 provides:
 Section III, Person Insured is replaced by the following:
 Each of the following is an insured under this insurance to the extent set forth below:
a. You;
 b. Any other person using a "hired auto" with your permission;
* * *
 d. Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under a., b., or c. above.
(Emphasis added.) Neither "you" nor "your" as used in subsection (2) [Section III] is defined.
Construing these sections, there are two ways that Pirnat could be provided coverage pursuant to Endorsement #11 for his use of a "hired auto." The first way that Pirnat could be covered under Endorsement #11 is if Pirnat, individually, is included in "you" as used throughout Endorsement #11. If Pirnat is included in the definition of "you," he would be covered under Endorsement #11 pursuant to the opening paragraph, and he would be covered as a "person insured" pursuant to Section III(b) [subsection (2)]. The second way that Pirnat could be covered under Endorsement #11 is if "you" is defined to include the entire Beta Theta Pi Fraternity, including its chapters. In such case, Pirnat would be covered pursuant to Section III(b) [subsection (2)] as a "person using a `hired auto' with your permission" because he was operating the van with the permission of the Ohio State University Chapter of the fraternity. Appellants argue that the insurance contract does not make clear who "you" is intended to include, and it could be reasonably interpreted to include the chapters and colonies and their member candidates.
Appellees argue that Pirnat would not be covered under any section of Endorsement #11 since "you" is defined as only the fraternity's national headquarters located in Oxford, Ohio. Appellees argue that Pirnat could not gain coverage under the opening paragraph of Endorsement #11 because he was not an employee of the national headquarters. Further, Pirnat would not be covered under Section III(b) (subsection [2]) as a "person using a `hired auto' with your permission," because clearly Pirnat was not operating the van with the permission of the national headquarters. Appellees argue that "you" is the national fraternity headquarters in Oxford, Ohio, and that it does not include any of the individual chapters or member candidates.
However, we find that "you" includes not only the fraternity's national headquarters but the members of the fraternity. This would include coverage to Pirnat as a member candidate of a chapter for purposes of hired-auto liability. See Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660. However, one of the few aspects of the auto portion of this policy that is clear is that Endorsement #12 would preclude coverage for Pirnat. Endorsement #12, which is entitled "Hired Auto and Non-Owned Auto Liability Individual Excluded," provides:
 It is agreed that this insurance does not provide "Bodily Injury["] or "Property Damage" coverage to any individual.
 Individual as used in this endorsement means any student or faculty member that is operating the "hired or non-owned auto" or is the owner of said auto.
Thus, the coverage described in Endorsement #11 is not provided for any student who is operating the rented vehicle. Endorsement #12 would only take effect if the driver is a student or faculty member. Any other driver would be unaffected by this restrictive endorsement. For whatever reason, Landmark did not desire to insure either students or faculty members operating hired or nonowned vehicles. In the present case, it is undisputed that Pirnat was both a student at the Ohio State University and was the individual operating the rented van at the time of the accident. Therefore, Endorsement #12 precludes any coverage for Pirnat for which he may have qualified pursuant to Endorsement #11. Accordingly, Pirnat is not entitled to liability coverage under the Landmark insurance policy for the loss in the present case.
Appellants argue that the exclusion language included in Endorsement #12 must be stricken because it is contradictory to Endorsement #22. Appellants point out that Endorsement #22 provides coverage to "[t]he Beta Theta Pi chapters and colonies" and "Members and Member Candidates, but only while acting within the scope of their duties in regard to the Named Insured"; yet Endorsement #12 excludes all "students" from coverage. Appellants assert that these two provisions are illogical and irreconcilable because all members and member candidates are students, and, thus, Endorsement #12 would exclude from hired-auto coverage all students, including all members and member candidates, for whom Endorsement #22 claims to provide coverage.
We find that Endorsement #22, which is part of the general liability portion of the policy, and Endorsement #12, which is part of the hired auto portion of the policy, are not contradictory for several reasons. First, a plain reading of the exclusion in Endorsement #12 reveals that such provision does not operate to exclude all students in all situations from coverage, as appellants claim. The Endorsement #12 exclusion applies only to students who are operating a hired automobile or other nonowned vehicle or their own auto. Thus, on its face, Endorsement #12 would not exclude coverage for certain students sustaining injury under circumstances other than while operating a vehicle, where such injuries arose out of the maintenance or use of the hired auto as provided in the opening paragraph of Endorsement #11. Therefore, Endorsement #12 would not exclude coverage for "all" students and there would be no contradiction between these policy provisions. Most importantly, Endorsement #22 provides that it amends Paragraph III of the Commercial General Liability Policy, which defines "persons insured." However, subsection (2) of Endorsement #11 provides that for the purposes of the hired-auto portion of the policy, Paragraph III is replaced by another set of definitions for "persons insured." Thus, the amended definitions set forth in Endorsement #22 were replaced by the definitions in Endorsement #11 for the purposes of the hired-auto portion of the insurance contract, thereby eliminating any contradiction between Endorsement #12 and #22. Therefore, appellants' argument is without merit.
We also note that subsequent to oral arguments in this case, the Supreme Court of Ohio released Scott-Pontzer, supra. Scott-Pontzer concerned underinsured motorist coverage pursuant to a commercial automobile liability insurance policy, which contained a specific underinsured provision, and an umbrella/excess insurance policy, which was found to include underinsured coverage by operation of law. However, in the present case, Pirnat is seeking a determination that he is entitled to coverage from Landmark for the injuries he caused Tate as a result of Pirnat's negligence in operating the van. The entire legal analysis in Scott-Pontzer is based upon case law and statutes interpreting and concerning uninsured/underinsured motorist coverage.
The Supreme Court's decision in Scott-Pontzer may apply to Tate's claims if he were to seek underinsured or uninsured coverage under the Landmark policy for his injuries. To date, he has not done so. In the General Commercial Liability Policy, automobile liability coverage was intended in limited circumstances, which was sufficient to bring it under the purview of R.C. 3937.18. See Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541. Although the record fails to indicate whether Landmark offered uninsured/underinsured coverage pursuant to R.C. 3937.18, if it did not, the policy would have automatically included such coverage by operation of law absent a written waiver. See Id. In such case, Tate would have been provided coverage because the uninsured/underinsured coverage inserted by operation of law would not be limited by the restrictions in the hired-auto portion of the policy. Scott-Pontzer, at 666.
Further, Tate may have been able to recover from Landmark directly as an "insured" since Endorsement #12 excludes coverage only for those operating the motor vehicle, but Tate was a passenger in the van. Tate has never sought recovery directly from Landmark as his insurer and did not name Landmark as a defendant in his complaint. Appellants have not argued on appeal that they are entitled to recovery under the Landmark policy through Tate's possible coverage as an insured. Rather, appellant's sole argument on appeal was that Pirnat himself was an insured under the Landmark policy so that Landmark would have provided Pirnat liability coverage for the payment of damages to Tate. For this reason, this court has not addressed whether Tate has uninsured motorist coverage under the Landmark policy.
Accordingly, appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS, P.J., and TYACK, J., concur.