OPINION
{¶ 1} Plaintiffs-appellants Richard and Sharon Schrock appeal from the September 26, 2002, Judgment Entry of the Delaware County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Indiana Insurance Company and denying the Motion for Summary Judgment filed by plaintiffs-appellants.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In April of 1994, appellants Richard and Sharon Schrock entered into a contract with Feazel Roofing Company for roofing repairs to their home located in Delaware County, Ohio. After their home developed additional leaks, appellants had Feazel perform additional repairs to their roof in 1999. Between 1994 and 2000, Feazel performed multiple roof repairs in an attempt to stop leaks.
 {¶ 3} Subsequently, after some shingles on the exterior of appellants' home came loose during a power washing, appellants discovered that the supporting studs had disintegrated from water damage. For such reason, appellants hired architect Stephen Galli to come out and determine the extent of the damage. Galli inspected appellants' home on March 11, 2000, and March 18, 2000. In his report[1], Galli stated, in part, as follows:
 {¶ 4} "An examination of the north wall during my March 2000 visits showed wood disintegration and a technical wall collapse. The following conditions were observed and can be viewed in the photographs in the appendix:
 {¶ 5} "multiple layers of metal flashing at the intersection of roof and wall,
 {¶ 6} "damp, wet and rotten wood from the roof eave to the house foundation,
 {¶ 7} "top bearing plates and banding boards rotten, with rot damaged ends of ceiling joist and roof rafters.
 {¶ 8} "fiberglass wall insulation moldy and stained,
 {¶ 9} "wall studs missing or totally rotten top plate to bottom plate,
 {¶ 10} "½ plywood sheathing rotten and missing,
 {¶ 11} "floor sheathing rotten at the bearing plates,
 {¶ 12} "exterior band-boards and bearing plates rotten with floor joist ends partly rotten.
 {¶ 13} "some floor settlement due to floor joist crushing rot damaged sill plates,
 {¶ 14} "exterior stone mortar joints loose and water damaged,
 {¶ 15} "interior drywall water stained — bedroom closet — bathroom,
 {¶ 16} "attic space — interior view — water stained rafters, ceiling joist, bearing plates."
 {¶ 17} Galli, in his report, further indicated that "[m]ost of the remaining structural wood was so rotten it crumbled easily in your hands" and that "[r]oof rain water penetrated the wall cavity allowing mold growth and wood damage." Galli made the following findings in his report:
 {¶ 18} "Within the bounds of experience, reasonable architectural and technical certainty, and subject to change if additional information becomes available, it is my professional opinion that:
 {¶ 19} "The north wall collapsed hidden from view due to structural redundancy of surrounding members.
 {¶ 20} "The wood rot and insect infestation is due to roof water seepage into wall cavities — 5 years is sufficient to rot framing lumber.
 {¶ 21} "The flat roofs wood rot and insect infestation is due to roof water seepage.
 {¶ 22} "The home if left unrepaired was potentially dangerous and required immediate corrective action and repair.
 {¶ 23} "The proximate cause for the above conditions is faulty roof installation and associated repairs."
 {¶ 24} On April 27, 2000, appellants notified appellee Indiana Insurance Company, which had issued a homeowner's policy to appellants, of the damage to their home. Appellee, in its "Property Loss Notice" form, indicated that appellants had "reported water damage to the north wall" of their house. After receiving appellants' claim, appellee hired SEA, Inc., an engineering firm, to go out to appellants' house and review the damage. As memorialized in a report dated June 27, 2000, SEA, Inc. noted that there was "extensive rot and deterioration" in the north wall and that "[e]ntire sections of major structural components had simply rotted away, indicating a long-term water infiltration problem " In its report, SEA, Inc. concluded that "[t]he observed damage in the north wall of the Schrock residence was caused by long-term water infiltration, originating along the roof edge at the top of the wall" and that it was probable that "the damage-producing leakage was caused by installation errors made by Feazel Roofing when the Schrock residence was reroofed in 1993."
 {¶ 25} Subsequently, appellee Indiana Insurance Company, via a letter to appellants dated July 6, 2000, informed appellants of the conclusions contained in SEA, Inc.'s report. In such letter, appellee denied coverage stating, in relevant part, as follows: "The Homeowner's policy does not cover this loss due to exclusions in the insurance policy for deterioration, wet or dry rot, faulty and inadequate design, workmanship, repair construction, renovation or remodeling or maintenance."
 {¶ 26} On May 29, 2001, appellants filed a complaint against Feazel Roofing Company, Todd Feazel dba Feazel Roofing, Mike Feazel dba Feazel Roofing, and appellee in the Delaware County Court of Common Pleas. Appellants, in their complaint, alleged that appellee had breached its insurance contract with appellants and acted in bad faith by denying coverage and that appellee had violated the Ohio Consumer Sales Practices Act. Appellants filed an Amended Complaint on January 22, 2002, adding a request for declaratory judgment that appellants' homeowner's policy provided coverage for the losses to appellants' residence and that appellee must indemnify appellants for such loss.
 {¶ 27} Appellants, on July 1, 2002, filed a Motion for Summary Judgment as to Counts VI (breach of contract) and IX (declaratory judgment) of their Amended Complaint. Appellants, in their motion, argued that they were entitled to coverage under the subject homeowner's insurance policy since the damage to their home was caused by rainwater and rainwater damage is a covered insured peril. Appellants further argued that the damage to their home amounted to a "collapse" and that collapse coverage was available under their homeowner's policy. Finally, appellants argued that the damage to their home was an insured peril under the "ensuing loss clause" of the policy.
 {¶ 28} Thereafter, appellee, on July 16, 2002, filed a Motion for Summary Judgment. Appellee, in its motion, contended that the homeowner's policy that it issued to appellants "explicitly does not cover wet and/or dry rot" regardless of how it occurs, that it was reasonably justified in denying appellants' claim and that it did not violate the Ohio Consumer Sales Practices Act.
 {¶ 29} Pursuant to a Judgment Entry filed on September 26, 2002, the trial court granted appellee's Motion for Summary Judgment while denying that filed by appellants. The trial court, in its entry, specifically concluded as follows:
 {¶ 30} "The Plaintiff's loss to their residence is excluded under the Defendant's policy. The Defendant's policy excludes loss caused by rot and deterioration. Moreover, whether rain water caused the rot and deterioration is not determinative of whether coverage exists under the policy. The policy excludes loss caused by rot and deterioration, regardless of the cause. Additionally, the Plaintiff's loss does not fall within the definition of collapse. The Plaintiffs' loss also does not fall within the ensuing loss clause. The ensuing loss clause applies when the loss resulting from rot would not be an ensuing loss. Consequently, the Plaintiffs are not entitled to coverage under the Defendant's policy for the loss to their residence."
 {¶ 31} In its order, the trial court expressly determined that there "was no just reason for delay "and that" [t]his is a final appealable order."
 {¶ 32} It is from the trial court's September 26, 2002, Judgment Entry that appellants now appeal, raising the following assignments of error[2]:
 {¶ 33} "THE TRIAL COURT ERRED BY FAILING TO FIND THAT APPELLEE-INSURER'S ALL-RISK POLICY PROVIDED COVERAGE FOR APPELANTS-HOMEOWNERS' LOSS AS A MATTER OF LAW, AND BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE-INSURER ON THIS ISSUE. CONCURRENTLY, THE TRIAL COURT ALSO ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN APPELLANTS' FAVOR.
 {¶ 34} "SINCE APPELLANTS-HOMEOWNERS PRESENTED EVIDENCE THAT THE APPELLEE-INSURER WAS NOT REASONABLY JUSTIFIED IN DENYING THE APPELLANTS-HOMEOWNERS' CLAIM, SUMMARY JUDGMENT WAS IMPROPERLY GRANTED IN APPELLEE-INSURER'S FAVOR AS A MATTER OF LAW."
 STANDARD OF REVIEW {¶ 35} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. Civ. Rule 56(C) states in pertinent part: "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 36} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support is claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264.
 {¶ 37} It is based upon this standard we review appellants' two assignments of error.
 I, II {¶ 38} Appellants, in their two assignments of error, argue that the trial court erred in granting summary judgment to appellee. Appellants specifically maintain that the trial court erred by failing to find that the homeowner's policy in this case provided coverage for appellants' loss. Appellants further contend that since they presented evidence that appellee was not reasonably justified in denying appellants'claim, the trial court improperly granted summary judgment to appellee with respect to their bad faith claim.
 {¶ 39} Generally, in construing contracts of insurance, words in a policy must be given their plain and ordinary meaning and only in situations where the contract is ambiguous and thus susceptible to more than one meaning must the policy language be liberally construed in favor of the claimant who seeks the benefits of coverage. State Farm Auto.Ins. v. Rose (1991), 61 Ohio St.3d 528, 531-532, 575 N.E.2d 459, overruled on other grounds. Further, when the language of an insurance policy is clear, it is unnecessary and impermissible for a court to resort to construction of that language. See Karabin v. State Automobile Mut.Ins. Co. (1984), 10 Ohio St.3d 163, 166-167, 462 N.E.2d 403, citingTravelers Indem. Co. v. Reddick (1974), 37 Ohio St.2d 119, 121,308 N.E.2d 454. Exclusions or exceptions in an insurance policy must be expressly provided or must arise by necessary implication from the policy language. Edmondson v. Motorists Mut. Ins. Co. (1976), 48 Ohio St.2d 52,53, 356 N.E.2d 722, 723.
 {¶ 40} In the case sub judice, the homeowner's policy issued by appellee Indiana Insurance Company to appellants states, in relevant part, as follows:
 {¶ 41} "SECTION I — PERILS INSURED AGAINST.
 {¶ 42} "COVERAGE A — DWELLING and
 {¶ 43} "COVERAGE B — OTHER STRUCTURES
 {¶ 44} "We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss:
 {¶ 45} "2. Caused by:
 {¶ 46} "e. Any of the following:
 {¶ 47} "(1) Wear and tear, marring, deterioration;
 {¶ 48} "(3) Smog, rust or other corrosion, mold, wet or dry rot; "
 {¶ 49} As is stated above, both appellants' expert, Stephen Galli, and appellee's expert, SEA, Inc., concluded that there was extensive rot and deterioration to appellants' home due to water seepage that was caused by the faulty roof work. We concur with the trial court that, based upon the language set forth above in the homeowner's insurance policy, the damage to appellants' residence was excluded.
 {¶ 50} Appellants, in support of their argument that such damage is not excluded, point to the "ensuing loss clause" contained in their homeowner's insurance policy. Such clause states, in pertinent part, as follows:
 {¶ 51} "We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted
in this policy is covered.
 {¶ 52} "a. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;
 {¶ 53} "c. Faulty, inadequate or defective:
 {¶ 54} "(1) Planning, zoning, development, surveying, siting;
 {¶ 55} "(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
 {¶ 56} "(3) Materials used in repair, construction, renovation or remodeling; or
 {¶ 57} "(4) Maintenance; of part or all of any property whether on or off the `residence premises'." (Emphasis added.)
 {¶ 58} While the damage to appellants' home was caused by "faulty, inadequate or defective" workmanship, repair, construction, renovation or remodeling of the roof, the ensuing loss clause, by its very terms, only covers losses to property "not excluded or excepted in this policy . . ." As noted by the trial court in its decision, "[b]ecause damage caused by rot and deterioration is excluded under the Defendant's policy, the Plaintiffs' loss is not an ensuing loss not excluded or excepted in the policy."
 {¶ 59} Appellants further contend that the trial court erred in granting summary judgment to appellee since the subject policy provides coverage for collapses caused by hidden decay. The homeowner's policy issued by appellee to appellants states, in part, as follows: "8.Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: b. Hidden decay; " The policy does not define the term "collapse."
 {¶ 60} While there is no dispute that there was no actual physical collapse of appellant's house or any part thereof, appellants contend that the damage to their home "may reasonably be defined as a collapse that was caused by hidden decay." Appellants point out that their expert, in his report, found that "[w]hile the interior stud wall collapsed, the exterior wall sheathing (drywall and cedar siding) remained in place, silently hiding the defects within". Appellants also stress that their expert concluded in his report that "[t]he north wall collapsed hidden from view due to structural redundancy of surrounding members" and that there was a "technical wall collapse" of the north wall.
 {¶ 61} As is stated above, in the case sub judice, there is no definition of the word "collapse" in the insurance policy. In Olmsteadv. Lumbermen's Mut. Ins. Co. (1970), 22 Ohio St.2d 212, 216,259 N.E.2d 123, the Ohio Supreme Court construed the word "collapse," which had not been defined in an insurance policy, and held that in its plain, common and ordinary sense, "collapse" means a falling down, falling together, or caving into an unorganized mass. As noted by the court in Olmstead, "[t]he assertion by plaintiffs that the parties intended the word `collapse' to have a broader meaning imposes the burden on plaintiffs of establishing that such was the true intent of the parties. As the Supreme Court of Texas said in Employers Mutual Cas. Co. of DesMoines, Iowa v. Nelson (Tex), 361 S.W.2d 704, at 709: `Although contracts are * * * to be construed strictly in favor of the insured, nevertheless they are to be construed generally as other contracts, in that unambiguous words and phrases are to be taken in their ordinary meaning unless there is something in the contract that would indicate a contrary intention.'" Id at 216.
 {¶ 62} In the case sub judice, appellants have presented no evidence concerning any contrary intent of the parties. For such reason, the word "collapse" must be given its ordinary and common meaning.
 {¶ 63} There is no evidence in this matter that any part of appellants' residence fell down, fell together or caved into an unorganized mess. Since, therefore, there is no evidence of a "collapse", appellants' were not entitled to coverage under their homeowner's policy for the damage to their home.
 {¶ 64} Appellants further argue that the trial court erred in granting appellee's motion for Summary Judgment since appellants presented evidence that appellee acted in bad faith in denying appellants' claim. Appellants specifically contend that they presented evidence to the trial court that appellee was "not reasonably justified" in denying such claim.
 {¶ 65} In Zoppo v. Homestead Ins. Co., 71 Ohio St.3d 552,1994-Ohio-461, 644 N.E.2d 397 the Ohio Supreme Court determined that an insurer "fails to exercise good faith in processing a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Id at paragraph one of the syllabus. A lack of reasonable justification exists where an insurer refuses to pay a claim in an arbitrary or capricious manner. Hart v. Republic Mut. Ins. Co. (1949), 152 Ohio St. 185, 188,87 N.E.2d 347.
 {¶ 66} Based on our conclusion that appellant's claim is not covered under their homeowner's policy, we find that appellee had a valid basis for denying coverage. For such reason, we find that appellee did not act in bad faith in denying appellants' claim since appellee's denial of coverage was not arbitrary, unconscionable or unreasonable.
 {¶ 67} Appellants' two assignments of error are, therefore, overruled.
 {¶ 68} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.
By: Edwards, J.
[1] Such report was dated June 25, 2002.
[2] Appellants, on November 19, 2002, filed a "Notice of [Voluntary] Dismissal of Complaint against Defendants Feazel Roofing Company, Todd Feazel and Mike Feazel" without prejudice.