OPINION
{¶ 1} Defendants-appellants, TGI Friday's Inc. ("Fridays") and FD Holdings, Inc. ("FD Holdings"), appeal from a judgment of the Franklin County Court of Common Pleas, which granted in part and denied in part a motion for summary judgment by plaintiff-appellee, Columbus Retail, Inc. ("Columbus Retail"), in this action seeking damages for breach of a commercial lease contract.[1]
 {¶ 2} In 1980, the parties and/or their predecessors in interest, entered into a lease agreement for the lease of retail space in the Worthington Mall. The lease, in its original form and as amended, contains three clauses pertinent to the issues in this appeal. First, section 6.04 provides that the tenant, "at its sole cost and expense," shall be responsible for maintenance of the roof and also for keeping the remainder of the premises in good condition and repair, but limits tenant's liability for roof and heating, ventilation and air conditioning ("HVAC") repair by requiring landlord to reimburse tenant for expenditures over set amounts if the repair expenses are incurred during the concluding years of the lease term. Section 10.01 is a general default clause and provides that, if tenant defaults, and the default continues for 30 days after tenant receives written notice of default, landlord may take possession and re-let the premises, and may terminate the lease. Section 16.03 indicates that all notices required under the lease shall be deemed properly served if delivered personally or sent by registered or certified mail.
 {¶ 3} In September 2002, Columbus Retail alleges that it sent Friday's and FD Holdings a letter by facsimile transmission in which it indicated that Friday's and FD Holdings were in default of the lease amendment's requirement that they repair and maintain the roof and HVAC. Friday's and FD Holdings apparently did not respond to this letter, and they assert that Columbus Retail did not provide proper notice of default because the contract does not allow for notice by facsimile transmission.
 {¶ 4} On January 17, 2003, Columbus Retail filed a complaint, which alleged that the defendants' failure to maintain the roof and HVAC during the 23 years it occupied the premises resulted in Columbus Retail having to bear the expense and responsibility for repairs. The complaint, which attached a copy of the lease contract, stated, in part:
8. On or about April 3, 1980, Friday's entered into a lease ("Lease") with Tod Ortlip, Jay Ortlip and John Antrim (the previous owners of the Mall and Plaintiff's predecessor-ininterest) for certain retail space (the "Premises") within the Mall. The Lease term commenced with the opening of the Mall on or about January 18, 1982 and had an initial term of 15 years. The Lease included options to extend the term for three additional terms of 5 years each. A copy of the Lease is attached hereto and incorporated herein as Exhibit I.
9. On or about May 16, 1980, the Lease was amended to include, inter alia, provisions regarding the parties' respective responsibilities for repair and maintenance of the Premises' [HVAC] systems. * * *
* * *
22. Pursuant to the May 1980 Amendment to the Lease and pursuant to its ongoing obligations under the various assignments and subleases described herein, Friday's was responsible for repair and maintenance of the Premises' roof and HVAC systems.
23. Friday's failed to repair and/or maintain the Premises' roof and/or HVAC systems and thereby breached its obligations under the Lease.
24. Plaintiff has incurred significant expense to repair and maintain the Premises' roof and/or and [sic] HVAC systems during the periods covered under the Lease.
25. The Premises' roof and/or HVAC systems are in need of additional repairs.
26. Plaintiff has been damaged by Friday's breach of its obligations under the Lease in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).
* * *
29. FD Holdings failed to repair and/or maintain the Premises' roof and/or HVAC systems and thereby breached its obligations under the Lease.
 {¶ 5} On or about January 31, 2003, Friday's vacated the premises. In February 2003, Friday's and FD Holdings filed separate, but identical, answers to the complaint in which they admitted the allegations contained in paragraphs 6 through 20 and 22 through 26 of the complaint. Notably, one of these allegations, paragraph 23, stated that Friday's failed to repair and/or maintain the roof and HVAC, thereby breaching its lease obligations. Although paragraph 29 of the complaint stated that FD Holdings failed to repair and/or maintain the roof and HVAC, thereby breaching the lease, FD Holdings' answer did not admit the allegations contained in paragraph 29.
 {¶ 6} In December 2003, Columbus Retail filed a motion for summary judgment, alleging that Dalt's was liable through default judgment because it had never answered or otherwise made an appearance in the case. Columbus Retail also alleged Friday's and FD Holdings did not dispute liability because their answers to the complaint admitted allegations that they had breached a duty to repair and maintain the roof and HVAC. Columbus Retail attached an affidavit of the mall's general manager, Matthew Klutznick, who indicated that Columbus Retail had incurred expenses in the amount of $107,445 for roof and HVAC repairs, as well as other documentation that confirmed these expenses. On this evidence, Columbus Retail asserted there was no genuine issue of fact regarding damages, thus, it was entitled to judgment as a matter of law.
 {¶ 7} In a joint memorandum contra Columbus Retail's motion for summary judgment, Friday's and FD Holdings argued that they had not received proper notice of default under the lease. Friday's and FD Holdings additionally claimed that the contract only required them to be responsible for the expenses of repair, not replacement, and that the extensive work Columbus Retail had done was actually a replacement of the existing roof. Finally, Friday's and FD Holdings maintained that Columbus Retail had not had any work done until after the conclusion of the lease term, therefore, Friday's and FD Holdings were not liable. In any event, Friday's and FD Holdings argued Columbus Retail had failed to preserve the evidence of the condition of the roof, and it hired contractors without seeking alternative bids or otherwise limiting costs. Thus, Friday's and FD Holdings argued that, even if they were liable to Columbus Retail, they were not responsible for the full amount of the costs.
 {¶ 8} The trial court granted summary judgment for Columbus Retail, stating:
In this regard, plaintiff has presented evidence that defendants were obligated under the lease to repair and/or maintain the roof and HVAC system, that defendants failed to do so, that their failure to repair/maintain caused the roof and HVAC system to fall into a state of disrepair, and that plaintiff expended funds in remedying this condition. In contrast, defendants present no evidence that plaintiff did not expend these funds or that the roof should have been repaired without replacing it and [cite] no legal authority which has held that "replacement" can never constitute a "repair."
Civ.R. 56(E) states, "[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Thus, defendants are liable for the repair/replacement of the roof and HVAC system.
Third, defendants argue that they "are entitled to large dollar credits for Plaintiff for repairs and maintenance to the roof and the HVAC system during the last actual renewal period." In its motion, plaintiff argues that defendants are jointly and severally liable for $107,445.00, plus interest; in its reply memorandum, plaintiff argues that defendants' argument that [paragraph] 3 of the 1980 Amendment to Lease limits their liability to a maximum of $50,000 for roof repairs and $50,000 for HVAC repair and maintenance in any year does not create a factual issue because contract interpretation is a matter of law and limiting defendants' liability to $50,000 for each expense would entitle plaintiff to judgment in the amount of $93,468.00, plus interest.
In its reply memorandum, plaintiff does not challenge the applicability of [paragraph] 3 of the 1980 Amendment to Lease. When this contractual provision is applied, defendants' liability is limited to $50,000.00 ($63,977.00 exceeds the $50,000.00 limit) for the roof and $43,468.00 for the HVAC system, for a total liability of $93,468.00. Thus, plaintiff is not entitled to recover the full amount sought in its motion, but its recovery is limited to $93,468.00.
 {¶ 9} Friday's and FD Holdings now assign the following as error:
The franklin county common pleas court erred in granting plaintiff-appellee's motion for summary judgment as issues of material fact remained to be determined and plaintiff-appellee's were not entitled to judgment as a matter of law.
 {¶ 10} Appellate review of summary judgment motions is de novo. Heltonv. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 11} In Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, the Ohio Supreme Court addressed the issue of burden shifting in the context of summary judgment, and held:
[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
(Emphasis sic.)
 {¶ 12} Here, Columbus Retail based its motion on the following evidence:
1. Answers by Friday's and FD Holdings that admitted Friday's breach of its duty under the lease to maintain the roof and HVAC system.
2. An affidavit of Matthew Klutznick, General Manager of the Worthington Mall, who averred that the lease stated that Friday's and FD Holdings were responsible for repairing and maintaining the roof and HVAC system, and that Columbus Retail incurred some $64,000 in roof expenses and $43,500 in HVAC expenses.
3. A copy of a written estimate from Chemcote Roofing Company that outlined the services that would be performed on the premises and the cost of those services.
4. A copy of a Contractor's Application for Payment, which indicated the services had been performed and requested payment.
5. An invoice from Environmental Air Company outlining HVAC repairs and replacements and totaling the cost for same.
Based on our review of the record, we find this evidence insufficient to meet Columbus Retail's burden under Civ.R. 56.
 {¶ 13} First, Columbus Retail's reliance on the answers of Friday's and FD Holdings is insufficient to establish liability as to them both. The Friday's answer admitted that it had "failed to repair and/or maintain the Premises roof and/or HVAC systems and thereby breached its obligations under the Lease[,]" thus, the trial court's granting summary judgment in favor of Columbus Retail on the issue of Friday's liability was proper. However, the FD Holdings' answer included no such admission. Therefore, a preliminary issue of fact remained as to whether FD Holdings is even liable, and the court should not have granted summary judgment on the issue of liability as to FD Holdings.
 {¶ 14} Second, even if Friday's and FD Holdings admit or are found to have been in breach, Columbus Retail's evidence does not resolve the outstanding factual issues. Most importantly, we disagree with the trial court that the terms of the contract explicitly address the damages to be awarded in the event of a breach. The construction and interpretation of a written contract to determine whether the terms are ambiguous and, thus, require extrinsic evidence to ascertain the contract's meaning, is a question of law that this court reviews de novo. Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus;Long Beach Assn. v. Jones (1998), 82 Ohio St.3d 574, 576. In construing a contract, our principal objective is to ascertain and give effect to the parties' intent, which is "presumed to reside in the language [the parties] chose to employ in the agreement." Kelly v. Medical Life Ins.Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Thus, we will only consider extrinsic evidence if the contractual language is ambiguous. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635,638. If the terms are not facially ambiguous, we will construe them by giving them their plain and ordinary meaning. Olmstead v. LumbermensMut. Ins. Co. (1970), 22 Ohio St.2d 212.
 {¶ 15} Here, at Section 10.01, the contract indicates that, in the event of a breach, Columbus Retail would be entitled to repossession of the premises. The contract does not, however, specifically allow for reimbursement for the landlord's expense incurred as a result of doing maintenance work that was the tenant's contractual responsibility. In the absence of contractual language supporting the court's award of money damages, there remained genuine issues of fact as to whether Columbus Retail was entitled to damages and, if so, in what amount and from whom.
 {¶ 16} Third, even if the trial court were to rely on Section 6.04 as amended as a guide to determine the expectations of the parties, the evidence submitted by Columbus Retail does not resolve whether the roof and HVAC work constituted repair or replacement, whether the amount Columbus Retail paid for this work was reasonable, or whether Columbus Retail should have sought alternative bids.
 {¶ 17} Finally, one aspect of Columbus Retail's argument, and the trial court's decision, is that Friday's and FD Holdings presented no evidence that the repairs were, in fact, replacements, were unnecessary or were too expensive. However, under Dresher, that was never the non-movant's burden. Rather, where the moving party fails to meet its initial burden of demonstrating the absence of a genuine issue of material fact, there is no reciprocal burden on the non-moving party. Columbus Retail having failed to meet its initial burden of showing the absence of a genuine issue of material fact in its case against Friday's and FD Holdings, the trial court erred in its grant of summary judgment in favor of Columbus Retail.
 {¶ 18} Although we reverse the judgment of the trial court on the basis that Columbus Retail's motion for summary judgment did not meet the requirements of Civ.R. 56, we agree with the trial court's conclusion on the issue of notice. Regarding the issue of notice, the trial court stated:
Defendants argue that they did not receive notice of the defaults.
Section 16.03 of the lease reads as follows:
Section 16.03. Notices. All notices required under this Lease shall be deemed to be properly served if delivered personally or sent by registered or certified mail postage prepaid with return receipt requested, to Landlord or to Tenant . . .
As such, section 16.03 does not state that defendants were entitled to written notice of the defaults but merely states that all "required" notices must be personally delivered or sent by registered or certified mail. In contrast, defendants do not cite another part of the lease which states that they were entitled to written notice of the defaults.
Also, section 10.01, "Rights on Tenant's Default," merely states that "[n]o act of Landlord shall be deemed an act terminating the Lease or declaring the Demised Term ended unless a written notice is served upon Tenant by Landlord expressly setting forth therein that Landlord elects to terminate this Lease or declare the term ended." However, plaintiff has not sought to use the defaults to terminate the lease but sought to get defendants to pay their share of the cost of repairs under the contract. As such, section 10.01 is inapplicable, and written notice was not required.
 {¶ 19} Friday's and FD Holdings argue that they did not receive written notice that Columbus Retail considered them to be in default; thus, they never had the opportunity to cure the default, and Columbus Retail should not be entitled to reimbursement for the repairs. However, the contract, by its terms, did not require Columbus Retail to give notice of default unless it was seeking to possess and re-let the premises or terminate the lease. Thus, the lease did not require Columbus Retail to give notice under these circumstances, and any failure of Columbus Retail to abide by terms requiring written notice to be delivered personally or sent by registered or certified mail did not affect Columbus Retail's claim.
 {¶ 20} We also agree with the trial court that Friday's and FD Holdings failed to produce supporting evidence for their contention that Columbus Retail had engaged in spoliation of evidence by not preserving the roof or HVAC system in their original condition. The elements of a cause of action for interference with or destruction of evidence are: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]" Smith v.Howard Johnson Co., Inc. (1993), 67 Ohio St.3d 28, 29. There simply was no evidence that Columbus Retail had destroyed evidence in an effort to disrupt Friday's and FD Holdings' defense. Therefore, we do not reverse the portion of the trial court's holding addressing the issue of spoliation.
 {¶ 21} Because Columbus Retail's motion for summary judgment failed to meet the requirements of Civ.R. 56(C), the trial court erred in granting it with regard to Friday's on the issue of damages and with regard to FD Holdings on the issues of both liability and damages. Based upon these considerations, we sustain the portion of Friday's and FD Holdings' assignment of error as it relates to damages, but overrule the assignment as it relates to the issue of Friday's liability, thus, we reverse the judgment of the Franklin County Court of Common Pleas, and remand this matter for further consideration in light of this opinion.
Judgment reversed and case remanded.
Petree and Sadler, JJ., concur.
[1] Defendant Dalt's LLC, failed to answer or appear in the trial court and is not a party to this appeal.